UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
LIONEL EUSTACE LEWIS,                               :
                                                    :
                          Plaintiff,                :
                                                    :                   MEMORANDUM & ORDER
                -against-                           :
                                                    :                   23-CV-2978 (ENV)
COMMISSIONER OF SOCIAL SECURITY,                    :
                                                    :
                          Defendant.                :
-------------------------------------------------------------- x
VITALIANO, D.J.

      Plaintiff Lionel Eustace Lewis seeks review, as permitted by the Social Security Act (the "Act"), 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI") benefits. Both Lewis and the Commissioner have moved for judgment on the pleadings. For the reasons set forth below, Lewis's motion is denied, and the Commissioner's cross-motion is granted.

Procedural History

      On August 26, 2019, Lewis applied for SSI, alleging disability since July 1, 2019. Administrative Transcript ("R."), Dkt. No. 9, at 21.[1] The Social Security Administration ("SSA") denied his claim on December 9, 2019, and again upon reconsideration on February 12, 2020. *Id.* at 212, 219. Faced with an adverse determination, Lewis requested a hearing before an administrative law judge ("ALJ"). *Id.* at 225–26. ALJ Margaret Pecoraro conducted Lewis's hearing on June 10, 2021. *Id.* at 154–83.

      In a decision dated October 12, 2021, the ALJ denied Lewis's claim. R. at 21–33. She concluded: (1) that Lewis had engaged in substantial gainful activity during the third and fourth

---

[1] Citations to the record, "R.," reference the record page numbers rather than the ECF pagination.

quarters of 2020 but had otherwise been unemployed for the relevant period; (2) that he has the following severe impairments: HIV, hypertension, diabetes, and neurocognitive disorder; (3) that none of his impairments entitle him to a presumption of disability; (4) that he has the residual functional capacity ("RFC") to perform "medium work" as defined in 20 C.F.R. 416.967(c), with certain additional limitations; and (5) that he is capable of performing his past work as a hardware salesman. *Id.* at 24–31. The ALJ also found that there are other jobs that exist in significant number in the national economy that Lewis could perform. *Id.* at 31–32. Based on these findings, the ALJ determined that Lewis had not been operating under a disability between August 26, 2019 and the date of her decision. *Id.* at 32.

The Appeals Council denied Lewis's request for review on March 13, 2023. R. at 1–7. Five weeks later, Lewis filed the instant complaint on April 20, 2023. *See* Compl., Dkt. No. 1.

## Background

A past patient of the facility, Lewis visited Queens Hospital Center on July 12, 2019 to re-establish care with its virology clinic. R. at 490. His existing ailments (HIV, hypertension, diabetes, and GERD) were noted in his chart. *Id.* at 483. He would soon be back, returning on September 24, 2019 to be treated in its emergency department for right ear pain. *Id.* at 588. Upon examination, Lewis's right ear canal exhibited redness and swelling, and the canal was partially blocked with clumps of pus and wax. *Id.* at 589. The treating physician diagnosed Lewis with otitis media (middle ear infection) and otitis externa (external ear infection) and prescribed antibiotic and anti-infectant medication. *Id.* at 590.

Three weeks later, on October 16, 2019, Lewis attended a consultative examination with Dr. Allen Meisel. R. at 624–27. Lewis told Dr. Meisel that he had been experiencing hearing loss in his right ear for the last two months. *Id.* at 624. Upon physical examination, Dr. Meisel

observed that Lewis had decreased hearing in his right ear and a cloudy tympanic membrane (eardrum) in his left ear. *Id.* at 626. In his medical source statement, Dr. Meisel opined that Lewis had "mild limitations of auditory acuity." *Id.* at 627.

On November 5, 2019, as part of Lewis's initial claim submission, Dr. L. Marasigan reviewed Lewis's medical records and opined that Lewis suffered from three "severe" impairments (namely, HIV, hypertension, and a gastrointestinal disorder) and two "non-severe" impairments (namely, hearing loss and a neurocognitive disorder). R. at 184–92. In reviewing Dr. Meisel's assessment, Dr. Marasigan concluded that any "[d]ecreased hearing" was "mild in nature and should not impact [claimant's] work activity." *Id.* at 187. With this stumbling start to his auditory complaints, Lewis completed a function report for his SSI claim on February 3, 2020. *Id.* at 408. In the report, Lewis wrote that he had no hearing issues. *Id.* at 407. Lewis's request for reconsideration of SSA's denial of his benefits claim also prompted Dr. R. Dickerson to review Lewis's updated medical records on February 10, 2020. *Id.* at 201. Dr. Dickerson affirmed Dr. Marasigan's assessment. *Id.*

On February 26, 2020, Lewis returned to Queens Hospital Center because his right ear had been itching for the last five months. R. at 51.[2] Physician's Assistant ("PA") Kimi Patel observed redness and swelling in Lewis's right ear canal, along with a partial blockage of the ear canal caused by a thick white discharge. *Id.* at 52. Notwithstanding these clinical findings, Lewis denied experiencing any ear pain or decreased hearing. *Id.* at 51. Once again, Lewis was diagnosed with an ear infection. *Id.* Lewis told PA Patel that he had been unable to pick up the medication

---

[2] The remaining medical evidence, except the treating source statement from April 2021, was not introduced before the ALJ but was instead submitted directly to the Appeals Council when Lewis made his request for Council review. R. at 2.

prescribed to him in September 2019, so he was re-prescribed the necessary medication to treat his ear infection. *Id.* at 51–52.

On April 9, 2020, Lewis had a telehealth visit with Nurse Practitioner ("NP") Lisa Russak. R. at 54. This time, Lewis reported feeling the same symptoms in his left ear that he had previously experienced in his right ear. *Id.* at 55. He was diagnosed with otitis externa in his left ear. *Id.* After this telehealth visit, Lewis made no further complaints about his ears. *See id.* at 56-107. Indeed, the only other visit of note to the Queens Hospital Center was entirely unrelated to any of Lewis's prior ear-related complaints. On February 26, 2021, Lewis visited Queens Hospital Center's emergency department complaining of dental pain and facial swelling. *Id.* at 102–03. Before referring Lewis to a dental clinic, the staff conducted a bilateral ear examination, which did not reveal anything abnormal. *Id.* at 104.

On April 21, 2021, NP Russak completed a treating source statement, addressing Lewis's physical conditions. R. at 755–58. While NP Russak did list diabetes, HIV, hypertension, and GERD, she did not mention any auditory limitations. *See id.*

<ins>Standard of Review</ins>

Section 405(g) of the Act empowers district courts to review a decision of the Commissioner and affirm, reverse, or modify it "with or without remanding . . . for a rehearing." 42 U.S.C. § 405(g). When evaluating a determination to deny disability benefits, a reviewing court may reverse the decision only if it is based upon legal error or if the factual findings are not supported by substantial evidence. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 91 (2d Cir. 2019). "Substantial evidence is 'more than a mere scintilla[;] [i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Cage v. Comm'r of Soc.*

4

*Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)).

When evaluating the evidence, "[t]he court may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quoting *Valente v. Sec'y of Health & Hum. Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)) (internal quotation marks omitted). In other words, "[t]he substantial evidence standard means once an ALJ finds facts, [courts] can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)) (internal quotation marks omitted).

## Discussion

Under the Act, a claimant is "disabled" if the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). This is the North Star guiding district court review of adverse SSA determinations. Regulations promulgated by the Commissioner provide protocols and guideways to assure a standardized but record-based review of the individual claims of aggrieved workers.

In evaluating a disability claim, the Commissioner follows a five-step process. The claimant bears the burden of proof at the first four steps. *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). First, the Commissioner must determine whether the claimant is currently engaged in any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, if the claimant is not gainfully employed, the Commissioner must determine whether the claimant has a "severe

impairment" that significantly limits the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Third, if the claimant has a severe impairment, the Commissioner must determine whether the impairment is one that entitles the claimant to a presumption of disability. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, if the claimant does not meet the criteria for being presumed disabled, the Commissioner must assess the claimant's RFC—that is, the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her impairments (both severe and non-severe)—and determine whether the claimant possesses the RFC to perform the claimant's past work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.945(a)(2). Fifth, if the claimant is not capable of performing prior work, the Commissioner must determine whether the claimant can perform any other work. 20 C.F.R. § 404.1520(a)(4)(v).

While Lewis does not dispute that the ALJ followed the five-step format, he does contend that she failed to meaningfully consider and address the impact of his auditory issues on his ability to work—and, in so doing, that she shirked her obligation to give a full explanation as to why she did not adopt the medical opinions that allegedly support Lewis's claim to an auditory limitation. *See* Pl.'s Br., Dkt. No. 15, at 4, 7. He argues that the ALJ's failure in this regard constituted fatal error and that the decision below must be vacated and remanded accordingly. *Id.*

Simply because an ALJ does not *address* every single piece of record evidence does not mean that the ALJ did not *consider* all the evidence, and thorough consideration is all that an ALJ is called upon to do. *See Brault*, 683 F.3d at 448. Although it is true that ALJ Pecoraro did not spell out in extensive detail the evidence underlying her decision not to include an auditory limitation in Lewis's RFC, any fair review of the record and her decision indicates that she clearly did examine the record in full and, as part of that analysis, assess the sufficiency of Lewis's auditory limitation claims. Not only does the ALJ say she did so, R. at 22 (stating that she engaged

6

in "careful consideration of all the evidence"), but she also refers to Lewis's alleged auditory impairment in relation to her appraisal of the evidence throughout her decision, *see id.* at 24, 29–30.

Though Lewis may be upset that the ALJ did not dwell on the issue of his auditory claim, the ALJ did what was required of her—and that is enough. *Brault*, 683 F.3d at 448 ("An ALJ does not have to state on the record every reason justifying a decision."). In accordance with SSA regulations, *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.945(a)(2), she concluded that Lewis's hearing loss amounted to, at most, a non-severe impairment and took it into account, along with all of his severe and non-severe impairments, when determining his RFC. *See* R. at 24–25. Given that the ALJ fully followed procedure, she did not then have to take the additional step of specifically mentioning every single factor that played a role in her decision not to include an auditory limitation for Lewis in his RFC. Unlike what Lewis may suggest, that is simply not a requirement imposed upon ALJs.

Similarly, Lewis's argument that the ALJ failed in her duty to account for inconsistencies between her RFC determination and the submitted medical opinions falls short. "Generally, an ALJ must reconcile discrepancies between his or her RFC assessment and medical source statements." *Lynch v. O'Malley*, No. 22 Civ. 5620 (CS) (AEK), 2024 WL 728483, at *11 (S.D.N.Y. Feb. 21, 2024). But an ALJ does not have to "recite every limitation opined in [a medical] opinion . . . to show that every limitation was considered." *Daniel E. v. Kijakazi*, No. 6:20-CV-1270 (DEP), 2022 WL 602533, at *6 (N.D.N.Y. Mar. 1, 2022). Among all of the medical assessments, only Dr. Meisel, after a single consultative examination, even reached the conclusion that Lewis's hearing was deteriorating, and the ALJ stated on the record that she found his opinion to be totally unpersuasive. R. at 30. While the ALJ did not discuss Dr. Meisel's diagnosis of an

auditory limitation in detail, she did express serious disagreement with his other findings, and her concerns about the opinion's overall reliability were clearly meant to encompass his auditory diagnosis. *Id.*

In any event, there was no true conflict between Dr. Meisel's and the ALJ's respective findings for the ALJ to explain. Dr. Meisel conducted his examination of Lewis a mere three weeks after Queens Hospital Center staff first noticed his ear infection—months before Lewis even laid eyes on the medicine he was supposed to be taking to clear up the infection. R. at 51–52, 588–90, 624–27. Additionally, Dr. Meisel only stated that Lewis suffered from "*mild* limitations of auditory acuity." *Id.* at 627 (emphasis added).

Overall, upon review of the administrative record, the Court is satisfied that the ALJ's decision not to include an auditory limitation in Lewis's RFC was supported by substantial evidence. Indeed, it is clear from the record that the claimed auditory impairment can be traced back to an untreated ear infection that flared up sporadically and disappeared altogether once Lewis began taking the medication he was prescribed. Tellingly, Lewis only began to complain of troubles with his hearing after he was diagnosed with the ear infection in September 2019. *See* R. at 588–90, 624–27. Once he finally started taking his prescribed antibiotics in the spring of 2020, he made no further mention of any ear-related issues. *See id.* at 51–107. Six months or so of clogged-up ears due to a minor and easily treatable infection does not warrant a full auditory limitation, particularly when that infection only lasted as long as it did due to Lewis's failure to take his medication as instructed. *See Faust v. Comm'r of Soc. Sec.*, No. 18-CV-313S, 2019 WL 4785532, at *7 (W.D.N.Y. Oct. 1, 2019) ("An ALJ is not obligated to incorporate temporary limitations in the RFC determination."); *Colon v. Comm'r of Soc. Sec.*, No. 20 CV 4652(GRB), 2021 WL 11714704, at *1 (E.D.N.Y. Dec. 21, 2021). Since Lewis's auditory impairment was no

more than a temporary, non-severe affliction that was, at least in part, self-inflicted, it was entirely sensible for the ALJ not to add an auditory limitation to Lewis's RFC.

Regardless, even if an ear infection did not cause Lewis's claimed hearing loss, the ALJ's RFC determination is still supported by substantial evidence, as Lewis's records do not indicate that he had any difficulty communicating with others. Neither the ALJ nor the many medical practitioners charged with Lewis's care mentioned having any troubles interacting with Lewis. *See Kazlauskas v. Berryhill*, No. 3:18-CV-00544 (KAD), 2019 WL 4605282, at *4 (D. Conn. Sep. 23, 2019) (finding no error in ALJ's decision not to include communication limitations where "the medical records do not reflect that the Plaintiff's treatment providers had any difficulty communicating with him . . . [and] it [did] not appear that the Plaintiff had any significant limitations to his ability to communicate with the ALJ"). Upon review, the hearing transcript also suggests that Lewis, besides having to ask for a question to be repeated on a few scattered occasions like others on the call, could effortlessly converse with the ALJ and his attorney. *See* R. at 154–83. But, even more importantly, Lewis himself *disclaimed* having any issues whatsoever with his hearing in his function report, noting instead that he can follow spoken instructions when needed. *Id.* at 407–08. With no evidence of functional limitations on hand, therefore, it was entirely logical for the ALJ to conclude that Lewis's auditory issues did not warrant inclusion in his RFC. *See Spinato v. Comm'r of Soc. Sec.*, No. 20-CV-3952(EK), 2023 WL 8565536, at *5 (E.D.N.Y. Dec. 11, 2023) (upholding ALJ's RFC determination when claimant's breast cancer diagnosis imposed no functional limitations).

9

Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is denied, and the Commissioner's motion is granted. The decision of the ALJ is affirmed.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
       November 11, 2025

/s/ Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge